**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**STEVE G. MONTES**,

      Plaintiff,

      vs.                                    **CIV. NO.  03-1465 MCA/RHS**

**TOWN OF SILVER CITY,
ALEX BROWN**, Town Manager,
and **MEL MARQUEZ**, all in their
individual and official capacities.

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant's *Motion in Limine to Exclude the Testimony of Dr. Linda Baldwin* [Doc. No. 73] filed on June 23, 2005, and Plaintiff's *Motion in Limine to Exclude the Expert Report and Matrix by Bruno Zaldo* [Doc. No. 82] filed on July 5, 2005.  Having reviewed the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion to exclude the proposed expert testimony of Dr. Linda Baldwin and grants Plaintiff's motion to exclude the expert report and matrix of Defendant's expert, Bruno Zaldo, for the reasons set forth below.

**I.**      **BACKGROUND**

According to the *Pretrial Order* [Doc. No. 71, at 23], Plaintiff will offer the testimony of Dr. Linda Baldwin regarding "all issues set forth in her expert report."  Dr. Baldwin's

expert report opines that during the hiring process at issue here, Defendants failed to comply with their own written hiring policies in several respects.  Although Dr. Baldwin states in her expert report that she does "not feel comfortable making a statement as to which candidate was most qualified," she questions whether the best candidate was hired and opines that Defendants "refused to hire Steve Montes based on his relationship with his uncle Tony Trujillo."  Dr. Baldwin's expert report further opines that Plaintiff "should be compensated at the very least for the two years he has been trying to settle this case" and "should be entitled to punitive damages as well."   [Ex. A to Doc. No. 74.]

Defendants have moved to exclude Dr. Baldwin's testimony on the grounds that she is not qualified to offer expert testimony in this matter, and that her opinions are neither relevant nor reliable.  Plaintiff responds by asserting that Dr. Baldwin is qualified to testify as an expert on the hiring process and procedures, and with respect to damages, because she has a degree in economics and extensive experience in teaching business, management, human resources, organizational behavior, labor relations and management, and organizational theory, as indicated on her resume.

While seeking to exclude the testimony of Plaintiff's expert, Defendants have indicated in the *Pretrial Order* [Doc. No. 71, at 27-28] that they intend to introduce the opinions of their own expert, Bruno Zaldo, regarding "the correct decision to hire Mr. Lawrence." [Doc. No. 71, at 27-28.] According to Mr. Zaldo's deposition testimony, he has developed a matrix to evaluate and rank the applicants for the mechanic position at issue in this case.  [Ex. 2, 3 to Doc. No. 83.]   Based on this matrix, Mr. Zaldo opines that the most

qualified applicant was in fact hired for the position, and that Plaintiff was not the most qualified applicant.

Plaintiff has moved to exclude Mr. Zaldo's matrix (and the expert report containing the opinion based on this matrix) on the grounds that the reconstruction of the hiring process prepared by Mr. Zaldo is neither relevant nor reliable and bears no relationship to Defendants' actual hiring process. In addition, Plaintiff objects to Mr. Zaldo's expert report because it refers to allegations in the *Complaint* which are not relevant or admissible evidence for purposes of trial. Defendants respond that Mr. Zaldo's matrix will be helpful to the jury because it provides a simplified way of depicting the qualifications that Defendants used in reviewing the applications, and because it will aid the jury in understanding Mr. Zaldo's testimony as to why Plaintiff was not the most qualified applicant.

## II.   ANALYSIS

Fed. R. Evid. 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with

respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function.  See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000).

In this case, the parties' proposed experts attempt to define the legal standards that the jury is to apply by reference to hiring policies or procedures that are codified under state or local law.  They also arrive at their opinions by making their own subjective determinations about which witnesses' testimony is more credible.  Expert testimony in these areas is neither relevant nor reliable because expert witnesses may not usurp the Court's role in instructing the jury on what legal standards to apply in a federal civil-rights case, see Specht v. Jensen, 853 F.2d 805, 807-09 (10th Cir. 1988), nor may such witnesses usurp the jury's factfinding role in determining whether the applicable legal standards have been met, see United States v. Adams, 271 F.3d 1236, 1245-46 (10th Cir. 2001).  Because expert testimony on issues of witness credibility or areas of law covered by the Court's jury instructions is of little or no relevance in this case and raises a substantial danger of unfair prejudice, confusion of the issues, or misleading the jury, see Fed. R. Evid. 403, the parties' experts may not testify as to which version of events set forth by the fact witnesses is more credible, nor may such experts be permitted to define for the jury the legal standards they are to apply in evaluating Plaintiff's claims.

Moreover, the state or local hiring policies or procedures to which the parties' proposed experts refer in their reports do not provide the applicable legal standard for

-4-

measuring the legality of Defendants' conduct in this case. All of Plaintiff's claims arise under 42 U.S.C. § 1983, and alleged violations of state or local law cannot, standing alone, form the basis for a claim under this statute. See Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001); Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988). Rather, the legal standards for determining whether Defendants acted unlawfully by not hiring Plaintiff in this case are defined by the interpretations of the First and Fourteenth Amendments to the United States Constitution provided by the Supreme Court and the Tenth Circuit. The jury will be informed of these legal standards by means of the Court's jury instructions, and counsel may refer to those jury instructions in their closing arguments. Thus, there is no need for expert testimony to define these standards.

The Constitution does not make federal courts into "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking." Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th Cir. 2004). The Supreme Court has repeatedly emphasized that "the Fourteenth Amendment is not a 'font of tort law to be superimposed on whatever systems may already be administered by the States,'" and that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998) (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)).

Thus, unlike an ordinary negligence or professional malpractice claim arising under state law, where expert testimony concerning the existence of standard operating procedures

is often necessary to define the standard of care applicable to the alleged tortfeasor, expert testimony on these topics is of minimal relevance here. The employment decisions of a state or local government agency will not be set aside as unconstitutional merely because the agency failed to follow its own internal hiring policies, or because there is a difference of opinion about which applicant for a particular position is the most qualified. See Jennings, 383 F.3d at 1211.

Rather, the focus of Plaintiff's federal civil-rights claims is on intentional discrimination or retaliation, *i.e.*, whether Defendants' decision not to hire Plaintiff resulted from a grudge that Defendant Mel Marquez allegedly held against Plaintiff's uncle, Tony Trujillo. Accordingly, the jury's central task is to determine Defendant Marquez's state of mind, and its causal relationship to the ultimate hiring decision.

The parties have not demonstrated a need for expert testimony on these central issues. Their proposed expert witnesses are not psychologists, and there has been no showing that their alleged expertise in employment matters provides them with a reliable and relevant basis for opining about a person's state of mind.

I recognize, of course, that certain procedural irregularities in the hiring process, including the failure to follow written hiring policies, may serve as circumstantial evidence of a person's state of mind. Cf. Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999) (permitting these factors to be considered in determining whether an employer's actions are pretextual); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (similar). I also recognize that

evidence concerning a municipality's official policies and procedures may be relevant to the related issue of whether that municipality is liable for failing to properly train or supervise its employees. See, e.g., Zuchel v. City and County of Denver, 997 F.2d 730, 742 (10th Cir. 1993).

In this case, the parties may be afforded an adequate opportunity to develop these issues by introducing the written hiring policies themselves and eliciting testimony from the fact witnesses as to whether relevant provisions of these policies were followed in reaching the hiring decision that Plaintiff is challenging here. I conclude, however, that the opinions of the parties' proposed experts will not assist the jury in understanding or resolving factual disputes concerning Defendants' hiring policies or practices because the respective methods or modes of analysis used by these experts is not reliable.

In reaching their respective opinions, the proposed experts rely heavily on their own personal, subjective experiences in hiring personnel or developing hiring policies in other contexts, as well as their own credibility assessments of the fact witnesses. Rather than applying a widely accepted or peer-reviewed methodology that can be subjected to some form of objective testing, these proposed experts serve as little more than "general-purpose second-guessers" of the reasonableness of Defendants' hiring decision, each offering their own generalized *post hoc* rationalization or critique of what they think happened. Jennings, 383 F.3d at 1211. I determine that their proposed testimony (including Mr. Zaldo's matrix) is not admissible under Fed. R. Evid. 702 or 403.

I also determine that Dr. Baldwin's testimony concerning damages is inadmissible under these rules for essentially the same reasons. Her opinion that Plaintiff should receive compensatory and punitive damages is conclusory at best and appears to be based on her own subjective assessment of the evidence as well as her view that state or local hiring policies or procedures provide the legal standards for measuring Defendants' conduct. See Medina, 252 F.3d at 1133.

### III.  CONCLUSION

For the foregoing reasons, I determine that the proffered expert opinions of Dr. Linda Baldwin and Bruno Zaldo are inadmissible under Fed. R. Evid. 403 and 702, and thus they will not be permitted to testify at trial in this case.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion in Limine to Exclude the Testimony of Dr. Linda Baldwin* [Doc. No. 73] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion in Limine to Exclude the Expert Report and Matrix by Bruno Zaldo* [Doc. No. 82] is **GRANTED**.

**SO ORDERED**, this 12th day of July, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*