# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**STEVE G. MONTES**,

      Plaintiff,

    vs.                                                **CIV. NO.  03-1465 MCA/RHS**

**TOWN OF SILVER CITY,**
**ALEX BROWN**, Town Manager,
and **MEL MARQUEZ**, all in their
individual and official capacities.

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' oral motion for judgment as a matter of law under Fed. R. Civ. P. 50(a).  Having reviewed the evidence introduced at trial, the arguments of counsel, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendants' motion in part as to Plaintiff's substantive due-process claim against Defendant Mel Marquez, Plaintiff's supervisory liability claim against Defendant Alex Brown, and Plaintiff's municipal liability claim against Defendant Town of Silver City.  The Court denies Defendants' motion in part as to Plaintiff's equal protection claim and First Amendment retaliation claim against Defendant Mel Marquez.  As the jury found in favor of Defendant Marquez on these two remaining claims, judgment on these claims will be entered separately pursuant to the jury's verdict.

I.    **BACKGROUND**

All of Plaintiff's claims in this matter arise from the denial of his application for employment as a mechanic with the Town of Silver City, New Mexico.  According to the *Pretrial Order* [Doc. No. 71] and trial briefs [Doc. No. 79,90], Plaintiff asserts three claims under 42 U.S.C. § 1983 against Defendant Mel Marquez.  First, Plaintiff claims that Defendant Marquez decided not to recommend Plaintiff for employment based on his relationship with his uncle, Tony Trujillo, and that by doing so, Defendant Marquez "unduly burdened" Plaintiff's liberty interest in pursuing a family association in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment.  Second, Plaintiff contends that Defendant Marquez violated the Equal Protection Clause of the Fourteenth Amendment by intentionally treating Plaintiff differently than other applicants for personal reasons of "sheer vindictiveness" evincing an "illegitimate animus unrelated to any legitimate state objective."   Third, Plaintiff claims that by not recommending him for employment, Defendant Marquez was retaliating against him for exercising his First Amendment right to freedom of association with his uncle, Tony Trujillo.  [Doc. No. 71, at 3-4.]

Plaintiff also asserts a supervisory liability claim under 42 U.S.C. § 1983 against Defendant Alex Brown, the Town Manager responsible for making the final hiring decision in this case.  In particular, Plaintiff asserts that Defendant Brown failed to supervise Defendant Marquez's compliance with the Town of Silver City's hiring procedures  and that this failure to supervise "amounted to gross negligence of Plaintiff's rights and prevented

Defendant Brown from discovering the misdeeds of Defendant Mel Marquez." [Doc. No. 71, at 4.]

Finally, Plaintiff asserts a municipal liability claim under 42 U.S.C. § 1983 against Defendant Town of Silver City. This claim involves three alternative theories. First, Plaintiff proffers a theory under which Defendant Marquez is treated as a final policy maker with the City, such that his alleged decision to consider Plaintiff's family association with his uncle in the hiring process constitutes the City's official policy. According to Plaintiff's second theory of municipal liability, even if Defendant Marquez's alleged consideration of Plaintiff's family association with his uncle did not constitute an official City policy, it nevertheless resulted from an unwritten custom of failing to follow the City's written policies and procedures for hiring new employees. Finally, Plaintiff proffers a third theory of municipal liability under which the allegedly unlawful actions of Defendant Marquez resulted from the City's failure to train him on proper hiring practices. [Doc. No. 71, at 5.]

In the *Pretrial Order* [Doc. No. 71, at 5] and in their *Trial Brief* [Doc. No. 90], Defendants contend that none of Plaintiff's theories state a claim under which relief may be granted, and that Plaintiff failed to present sufficient evidence to support these theories at trial. Defendants restated these contentions in an oral motion during the trial before the case was submitted to the jury.

## II.  <u>ANALYSIS</u>

### A.  <u>Standard of Review</u>

Fed. R. Evid. 50(a) provides that:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

This rule also requires that a motion for judgment as a matter of law at the close of the evidence "specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2). But "'[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position.'" Cummings v. General Motors Corp., 365 F.3d 944, 949 (10th Cir. 2004) (quoting United States v. Fenix & Scisson, Inc., 360 F.2d 260, 266 (10th Cir.1966)). Indeed, a court may raise the issue *sua sponte* before the jury reaches a verdict and grant a judgment as a matter of law under Rule 50(a) on its own motion. See Am. & Foreign Ins. Co. v. Bolt, 106 F.3d 155, 160 (6th Cir. 1997). "Upon such a motion, the court 'may grant a directed verdict only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position,' with the evidence and inferences construed in the light most favorable to the nonmoving party." Cummings, 365 F.3d at 949 (quoting Q.E.R., Inc. v. Hickerson, 880 F.2d 1178, 1180 (10th Cir.1989)); see also McKenzie v. Renbergs, Inc., 94 F.3d 1478, 1483 (10th Cir. 1996) (affirming a district court's decision to grant judgment as a matter of law under this standard).

Applying this standard of review, I conclude that Defendants are entitled to judgment as a matter of law on Plaintiff's substantive due-process claim against Defendant Mel

Marquez, Plaintiff's supervisory liability claim against Defendant Alex Brown, and Plaintiff's municipal liability claim against Defendant Town of Silver City.  As I stated at trial, Defendant Mel Marquez is not entitled to judgment as a matter of law on Plaintiff's equal protection claim and First Amendment retaliation claim.  Therefore, these two claims against Defendant Mel Marquez in his individual capacity were submitted to the jury.

The jury found in favor of Defendant Mel Marquez on Plaintiff's equal protection and First Amendment retaliation claims.  The jury's verdict in favor of Defendant Mel Marquez on these two remaining claims renders further analysis of such claims unnecessary for purposes of Fed. R. Civ. P. 50(a).  Accordingly, I limit my analysis to the claims that were not submitted to the jury as a result of my rulings at trial.

I first analyze the claims directed at the individual Defendants in their personal capacities, namely Plaintiff's substantive due-process claim against Defendant Marquez, and Plaintiff's supervisory liability claim against Defendant Brown.  I then address Plaintiff's municipal liability claim against Defendant Town of Silver City.  Insofar as Plaintiff has asserted claims against Defendant Brown and Defendant Marquez in their official capacities, I treat them as claims against the municipality itself.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir.1988).

### B.    Plaintiff's Substantive Due-Process Claim

Under his substantive due-process claim, Plaintiff contends that Defendant Marquez "unduly burdened Plaintiff's right to engage in familial association" by failing "to recommend Plaintiff for employment because of his relationship with his uncle, Tony

Trujillo." [Doc. No. 71, at 3.] I conclude that Defendant Marquez is entitled to judgment as a matter of law with respect to this claim for the following reasons.

In order to proceed with a substantive due-process claim, Plaintiff must establish a constitutionally protected liberty or property interest. See Singleton v. Cecil, 176 F.3d 419, 424-25 (8th Cir. 1999) (en banc) (collecting cases). An applicant for employment does not have a constitutionally protected property interest in the job for which he or she is applying. See generally Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000) ("An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.'"). Moreover, federal courts have rejected the notion that there exists a right to "occupational liberty" that is protected by the substantive component of the Due Process Clause and that would provide a basis for challenging the decision-making of public employers. See Singleton, 176 F.3d at 424-28; Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 404 (3rd Cir. 2000); McKinney v. Pate, 20 F.3d 1554, 1556 (11th Cir. 1994) (en banc).

Lacking any constitutionally protected liberty or property interest in the prospective employment relationship itself, Plaintiff instead relies on his familial association with his uncle in order to support his substantive due-process claim. A claim premised on a right to "intimate association" with extended family members is questionable in this context because the Supreme Court generally has limited substantive due-process protections to relationships between spouses or between parents and their children. See generally Washington v. Glucksberg, 521 U.S. 702, 720 (1997) (collecting cases). It is less obvious whether a

relationship between a nephew and an uncle merits constitutional protection or heightened scrutiny in this context. The few authorities recognizing a constitutionally protected right of intimate association other than that between spouses or between parents and children generally have involved more direct and substantial efforts by the Government to regulate or interfere with the relationship, as when a zoning ordinance prohibits grandparents and grandchildren from sharing the same residence, see Moore v. City of East Cleveland, 431 U.S. 494 (1977), or when a criminal statute prohibits sexual activity between consenting adults inside a private residence, see Lawrence v. Texas, 539 U.S. 558 (2003), or when a child-abuse investigation has the effect of separating persons from their family, see Griffin v. Strong, 983 F.2d 1544 (10th Cir. 1993); Morris v. Dearborne, 181 F.3d 657, 668 (10th Cir. 1999).

The facts alleged here do not involve such a direct effort to separate Plaintiff from his uncle or prohibit them from associating with one another in a substantial way. Rather, the focus of this case is on the prospective employment relationship between Plaintiff and Defendants, which has only an indirect, collateral effect, if any, on the relationship between Plaintiff and his uncle.

Nevertheless, I assume for purposes of analysis that Plaintiff has a constitutionally protected liberty interest in pursuing his family relationship with his uncle. Cf. Shahar v. Bowers, 114 F.3d 1097, 1099-1100 (11th Cir. 1997) (en banc) (assuming without deciding that a prospective employee had a constitutionally protected liberty interest in freedom of intimate association with a same-sex partner). This assumption, however, does not preclude

judgment as a matter of law on Plaintiff's substantive-due process claim because even in cases where there is no question that the family relationship is constitutionally protected (as in the case of marriage), courts have declined to recognize such a claim where the plaintiff is challenging an employment action that did not directly, substantially, and intentionally interfere with that family relationship.

In Singleton, for example, the plaintiff was a police officer whose employment was terminated by the police chief after the chief formed an unfavorable opinion of the officer's family members by listening to a recorded telephone conversation between plaintiff's wife and daughter in which the wife told the daughter that she wanted to "set up" the police chief by hiring someone to bribe him.  The chief learned of this conversation from a private investigator who happened to be monitoring and recording cordless telephone conversations using a radio scanner.  Following the termination of his employment, the officer sued the police chief alleging a violation of his constitutional right to the privacy of his marital relationship under the substantive component of the Due Process Clause.

A panel of the Eighth Circuit rejected this claim because the employer's actions were directed at the employment relationship, not at the plaintiff's family relationships with his wife or his daughter. There was no showing that the plaintiff's employer acted with the intent to destroy the plaintiff's marriage or that the termination of the plaintiff's employment would have the effect of separating him from his wife or daughter in any direct or substantial way. See Singleton v. Cecil, 133 F.3d 631, 634 (8th Cir. 1998).  Although the case was later

rehear *en banc*, the *en banc* opinion simply reaffirmed the panel's earlier ruling on this issue. See Singleton, 176 F.3d at 423.

The Eighth Circuit's reasoning in Singleton accords with the reasoning of the Supreme Court and the Tenth Circuit. Under this reasoning, the existence of a fundamental right to marry "does not invalidate every state action that has some impact on marriage." Singleton, 133 F.3d at 635, aff'd on reh'g, 176 F.3d at 423. Stated in more general terms, "[n]ot every regulation that involves or somehow regulates on the basis of family membership is unconstitutional." Gorrie v. Bowen, 809 F.2d 508, 522-23 (8th Cir. 1997). "To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." Zablocki v. Redhail, 434 U.S. 374, 386 (1977). Thus, "a regulation must interfere 'directly and substantially' with family choices before it is unconstitutional." Gorrie, 809 F.2d at 523 (quoting Zablocki, 434 U.S. at 387); accord Lyng v. Castillo, 477 U.S. 635, 638 (1986); Doe v. Miller, 405 F.3d 700, 710-11 (8th Cir. 2005).

In order to directly and substantially interfere with the right to familial association, the defendant's action must impose an "undue burden" on the family relationship. Griffin, 983 F.2d at 1547. In other words, the defendant's action must "significantly discourage" the plaintiff's right to enter into or maintain the family relationship so that it is "practically impossible" to sustain. Zablocki, 434 U.S. at 387 n.12. Moreover, in the Tenth Circuit, "[a] defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." Morfin v. Albuquerque Pub. Schs., 906

F.2d 1434, 1440 (10th Cir. 1990).   Thus, the government's conduct "will work an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right."   Trujillo v. Bd. of County Comm'rs, 768 F.2d 1186, 1190 (10th Cir. 1985); cf. Griffin, 983 F.2d at 1549 (concluding that a directed verdict in favor of the defendant was required where the impact of the state action on the plaintiff's right to familial association was "slight" and did not "unduly interfere" with that right).

In this case, Defendants' actions are directed at the prospective employment relationship, not at Plaintiff's relationship with his uncle.   Plaintiff has failed to come forward with evidence that Defendants' decision not to hire him was ever intended to cause, or actually did cause, any direct, substantial, or undue interference with his ability to associate with his uncle.   On the contrary, the evidence at trial showed that Plaintiff and his uncle continued to enjoy a positive and supportive family relationship with one another after Defendants' hiring decision.   Based on the absence of legally sufficient evidence from which a rational jury could find that Defendant Marquez intentionally interfered with Plaintiff's family relationship in a direct, substantial, or undue manner, I conclude that Defendant Marquez is entitled to judgment as a matter of law on Plaintiff's substantive due-process claim.

**C.**     **Plaintiff's Supervisory Liability Claim Against Defendant Brown**

In addition to his claims against Defendant Mel Marquez, who was on the screening committee, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the Town Manager, Defendant Alex Brown.   Under a theory of supervisory liability, Plaintiff contends that if

Defendant Brown had been more actively involved in the hiring process (instead of deferring or delegating to the department head, personnel officer, and/or screening committee), he would have noticed a failure to follow the City's written hiring policies and discovered Defendant Marquez's improper motive for not hiring Plaintiff.

Pursuant to state law, Defendant Brown was the municipal official who had the requisite authority to make the final hiring decision at issue in this case. See N.M. Stat. Ann. § 3-14-14 (Michie 2004). In the *Pretrial Order* [Doc. No. 71, at 7], the parties stipulated that "according to the Town of Silver City Personnel Manual, the 'department head recommends the top candidate to the Town Manager.'" The parties further stipulated that the department head in this case, Peter Pena, signed the recommendation form for the job vacancy at issue and that the Town's personnel officer, Celia Dominguez, signed the form on behalf of Defendant Brown and sent him a memo indicating her concurrence with the department head's recommendation. [Doc. No. 71, at 7.] These stipulations accord with the evidence presented at trial.

While Plaintiff asserts that Defendant Brown was negligent or inattentive in supervising other city personnel with respect to the hiring decision at issue here or the implementation of the City's hiring procedures on a more general level, such negligence or failure to act does not provide a basis for imposing supervisory liability under 42 U.S.C. § 1983. In order to establish that an individual Defendant is liable in his or her personal capacity under 42 U.S.C. § 1983, Plaintiff must present admissible evidence from which a rational factfinder could conclude that the individual Defendant "personally participated in"

the alleged deprivation of constitutional rights by means of "'a deliberate, intentional act.'" Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996) (quoting Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)).  "Supervisor status by itself is insufficient to support liability" under this statute.  Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996) (citing Rizzo v. Goode, 423 U.S. 362 (1976)).

        To establish supervisory liability under 42 U.S.C. § 1983, a plaintiff must "show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Green v. Branson, 108 F.3d 1296, 1302 (10th Cir.1997) (internal quotation marks omitted). Further, it is not enough to show that a supervisor "should have known" that the alleged deprivation was occurring and failed to stop it, Woodward, 977 F.2d at 1399, because "[l]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence," Green, 108 F.3d at 1302; cf. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989) (rejecting "gross negligence" standard for determining municipal or supervisory liability).

        Moreover, alleged violations of state or local law cannot, standing alone, form the basis for a claim under 42 U.S.C. § 1983.  See Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001); Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988).  The provisions of the Constitution which Plaintiff seeks to enforce under this statute do not make federal courts into "general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking." Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th

Cir. 2004).  The Supreme Court has repeatedly emphasized that "the Fourteenth Amendment is not a 'font of tort law to be superimposed on whatever systems may already be administered by the States,'" and that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 848-49 (1998) (quoting <u>Paul v. Davis</u>, 424 U.S. 693, 701 (1976)).

In light of these authorities, Defendant Brown cannot be held liable under 42 U.S.C. § 1983 for violating the First or Fourteenth Amendments to the United States Constitution merely on the grounds that he was negligent in failing to follow state or local laws regarding hiring procedures.  Rather than relying on the "lowest common denominator of customary tort liability," <u>Lewis</u>, 523 U.S. at 848, Plaintiff must establish a much higher degree of culpability on the part of Defendant Brown in order to show a constitutional violation, *i.e.*, that he actually knew of and consciously acquiesced in Defendant Marquez's alleged misbehavior, or that he acted with deliberate indifference to an excessive risk that a prospective employee's constitutional rights would be violated in the manner alleged here.

Plaintiff has failed to come forward with legally sufficient evidence to meet this high standard of culpability.  He also has failed to come forward with legally sufficient evidence of an affirmative link between Defendant Brown's actions and the constitutional deprivations allegedly committed by Defendant Marquez.  In particular, there is no evidence that Defendant Brown knew of or shared Defendant Marquez's alleged grudge against Plaintiff's uncle, nor is there any evidence that Defendant Brown allowed such a grudge to factor into

the City's ultimate hiring decision.  For these reasons, I conclude that Defendant Brown is entitled to judgment as a matter of law on Plaintiff's supervisory liability claim.

### D.    Plaintiff's Municipal Liability Claim

Plaintiff also has asserted a claim against Defendant Town of Silver City and against Defendant Brown and Defendant Marquez in their official capacities.  As previously noted, Plaintiff's official-capacity claims are treated as claims against the municipality itself.  See Brandon, 469 U.S. at 471-72; Watson, 857 F.2d at 695.

Municipalities can be held liable under 42 U.S.C. § 1983 only for their own unconstitutional or illegal policies, not for the tortious acts of their employees.  See Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir.1998).  In order to prevail on a claim under 42 U.S.C. § 1983 against a municipality or a municipal official sued in his or her official capacity, a plaintiff must prove (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the "moving force" behind the constitutional deprivation.  See Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998).  Here Plaintiff attempts to meet this burden by means of three alternative theories of municipal liability.  I separately analyze each of these theories.

### 1.    The Theory that Defendant Marquez is a Final Policy Maker

When an official municipal policy itself violates federal law, "issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." Barney, 143 F.3d at 1307.  Proving the existence of such an official municipal policy also is relatively straightforward when that policy is expressly established

by the municipality's authorized decisionmaker, *i.e.*, the person "responsible for establishing final policy [for the municipality] with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986) (plurality opinion).  "If the decision to adopt [a] particular course of action is properly made by [the] government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."  Id. at 481; see Lopez v. Lemaster, 172 F.3d 756, 763-64 (10th Cir. 1999).

In this case, there is no allegation that Defendant Town of Silver City's written hiring policies and procedures are unlawful on their face, nor is their any express decision by a duly authorized official policy maker, such as Defendant Brown, to establish an unwritten policy of not hiring people related to Plaintiff's uncle.   Nevertheless, Plaintiff attempts to elevate Defendant Marquez, a shop supervisor who served on the screening committee, to the status of an authorized official municipal policy maker for purposes of establishing a municipal liability claim.   Under this theory, Plaintiff asserts that Defendant Marquez's alleged decision to discriminate or retaliate against Plaintiff based on his familial relationship to his uncle amounted to an expressly established municipal policy.

The Supreme Court and the Tenth Circuit have determined that "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury."  Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); accord McMillian v. Monroe County, 520 U.S. 781, 784-85 (1997); Hollingsworth v. Hill, 110 F.3d 733, 743

(10th Cir. 1997).  Thus, it is error to allow the jury to decide who qualifies as a final policy

maker for a municipality.  See Gros v. City of Grand Prairie, 181 F.3d 613, 617 (5th Cir.

1999).

 The Supreme Court and the Tenth Circuit also have identified "three elements that

help determine whether an individual is a 'final policymaker': (1) whether the official is

meaningfully constrained 'by policies not of that official's own making;' (2) whether the

official's decision are final--i.e., are they subject to any meaningful review; and (3) whether

the policy decision purportedly made by the official is within the realm of the official's grant

of authority."  Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995) (quoting  St.

Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).  The delegation of final policy-making

authority "does not occur when a subordinate's decisions are constrained by policies not of

his making or when those decisions are subject to review by the authorized policymaker."

Ware v. Unified Sch. Dist., 902 F.2d 815, 818 (10th Cir.1990).  "Simply going along with

discretionary decisions made by one's subordinates . . . is not a delegation to them of the

authority to make policy."  Praprotnik, 485 U.S. at 130.  "Delegation must be absolute to

give rise to the 'final authority.'   If the [municipality] retains the authority to review, even

though it may not exercise such review or investigate the basis of the decision, delegation

of final authority does not occur."  Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992) (citing

Williams v. Butler, 863 F.2d 1398, 1402 (8th Cir.1988)).  Thus, "the mere failure to

investigate the basis of a subordinate's discretionary decisions does not amount to a

delegation of policymaking authority, especially where (as here) the wrongfulness of the

subordinate's decision [allegedly] arises from a retaliatory motive or other unstated rationale."  <u>Praprotnik</u>, 485 U.S. at 130; <u>accord</u> <u>Ware</u>, 902 F.2d at 818; <u>Wulf v. City of Wichita</u>, 883 F.2d 842, 869 (10th Cir. 1989).

Application of these authorities to the evidence introduced at trial in this case compels the conclusion that Defendant Mel Marquez was not acting as the City's final policy maker when he formulated or delivered his recommendations about which applicant to hire for the mechanic position at issue here.  Any delegation of authority to Defendant Marquez was not absolute, as his role in the hiring process, as well as the basis for his recommendations about which applicant to hire, were subject to meaningful review at several levels.  It is undisputed that other City employees participated in the interviews, and that the recommendations of the screening committee were reviewed by other City personnel, including the Department Head, Peter Pena, and the City's Personnel Officer, Celia Dominguez, who submitted a memorandum and a recommendation form to the City Manager, Defendant Alex Brown.  The fact that Defendant Brown or other City personnel did not investigate further to probe Defendant Marquez's motives does not mean that there was an absolute delegation of hiring authority to Defendant Marquez.   Accordingly, Defendants are entitled to judgment as a matter of law on this theory of municipal liability.

### 2.    <u>The Theory that Defendants Were Following an Unwritten Custom</u>

A municipality may be liable for constitutional deprivations "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658,

691 (1978); see Pembaur, 475 U.S. at 481-82 n.10 (holding that the custom may be established by proof of knowledge and acquiescence). Such a theory of municipal liability "requires that the illegal practice be 'widespread'--*i.e.*, involving a 'series of decisions.'" Randle, 69 F.3d 441, 447 (10th Cir. 1995) (quoting Prapotnik, 485 U.S. at 127, 130). In other words, the illegal practice must be a "longstanding," such that it constitutes the "standard operating procedure" of the municipality. Id. (quoting Jett, 491 U.S. at 736). Thus, "[a] single incident normally does not suffice to prove the existence of a municipal custom." Mettler v. Whitledge, 165 F.3d 1197, 1205 (8th Cir. 1999) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion)); accord Randle, 69 F.3d at 447.

In this case, Plaintiff has failed to come forward with legally sufficient evidence to show that Defendant Town of Silver City engaged in any widespread, longstanding custom of allowing the type of personal biases attributed to Defendant Marquez to predominate in its hiring decisions. On the contrary, the evidence of such personal bias is limited to the single incident involving Defendant Marquez's recommendations with respect to Plaintiff's application for employment as a mechanic in the Summer of 2003. The evidence concerning this single incident is not legally sufficient to support a theory of municipal liability that is based on the existence of an unwritten municipal custom.

At trial, however, Plaintiff presented evidence of other unwritten customs of Defendant Town of Silver City which were not codified in its written hiring policies. These customs included (1) allowing the City's Personnel Officer, Celia Dominguez, to "pre-screen" applicants for employment with the City, (2) allowing applicants who met the

application deadline to supplement their applications with additional information supplied after that deadline, and (3) allowing City employees to serve as references for applicants, even when those City employees are serving on the screening committee.

While Plaintiff presented evidence that Defendant Town of Silver City engaged in such unwritten customs during the relevant time period, he has not presented legally sufficient evidence from which a reasonable jury could conclude that these unwritten customs were the "moving force" behind any constitutional violation.  The unwritten custom of allowing the City's Personnel Officer to "pre-screen" applicants did not result in any constitutional deprivation because there is no evidence that Plaintiff's relationship with his uncle was considered during the Personnel Officer's "pre-screening" process, and in any event, Plaintiff's application was not excluded from consideration as a result of this process.  On the contrary, Plaintiff was one of the applicants who made it through the "pre-screening" process and was granted an interview before the screening committee.

There was also no evidence of a constitutional deprivation caused by the unwritten custom of allowing applicants who met the application deadline to supplement their applications with additional information supplied after that deadline.  At trial, the parties presented evidence that both Plaintiff and the successful applicant, David Lawrence, met the application deadline and later supplemented their written applications.  In particular, there was evidence that Mr. Lawrence supplemented his application by submitting an update to the "employment history" section of his resume, on which he added the names and telephone numbers of his references, including Defendant Mel Marquez.  Plaintiff has not shown,

however, that Mr. Lawrence's updated page from his resume provided any significant new information that Defendants could not have gleaned from his original application, which also listed Defendant Mel Marquez as a reference.  Because the updated resume page provided by Mr. Lawrence did not contain significant new information, there is no reasonable basis on which to infer that this supplementary document had any improper influence on Defendants' hiring decision.

Further, Plaintiff himself also benefitted from the unwritten custom at issue here because there was evidence that he, too, supplemented his written application.  In particular, there was evidence that Plaintiff instructed or allowed another City employee, Freddy Marquez, to "put in a good word for him" with Defendant Mel Marquez.  Plaintiff also testified that he personally visited with Defendant Mel Marquez prior to being interviewed by the screening committee.  Thus, to the extent there was an unwritten municipal custom of allowing applicants to supplement their written applications, Plaintiff took advantage of that custom for his own benefit and has not shown that he was deprived of the opportunity to present favorable supplementary information to any of the City personnel involved in the hiring process.  The opportunity for the applicants to supplement their written applications simply has no direct link to the constitutional violations alleged here.

Finally, the evidence introduced at trial does not support a reasonable inference that Defendant Town of Silver City's unwritten custom of allowing City employees to serve as references for applicants was the "moving force" behind any constitutional violation.  At trial, Plaintiff presented evidence that the successful applicant, Mr. Lawrence, listed

Defendant Mel Marquez as a reference on his application and may have attempted to highlight or draw attention to the fact that he had worked with Defendant Mel Marquez in the past. There was also evidence that Defendant Mel Marquez filled out a reference form regarding Mr. Lawrence after the screening committee had recommended Mr. Lawrence for the position, and after the Department Head and Personnel Officer had reviewed and concurred in the screening committee's recommendation. The jury may have reasonably inferred from this evidence that Mr. Lawrence's efforts to highlight his past employment relationship with Defendant Marquez by listing him as a reference resulted in Defendant Marquez taking a favorable view of Mr. Lawrence's application, which he then communicated to other City personnel involved in the hiring decision.

It does not follow, however, that Defendant Marquez's favorable view of Mr. Lawrence's application amounted to a violation of Plaintiff's constitutional rights, much less that a municipal custom was the moving force behind such a constitutional violation. The basis for all of Plaintiff's claims in this case is that Defendant Marquez harbored an irrational bias against Plaintiff, not that Defendant Marquez exhibited favoritism toward Mr. Lawrence.

Moreover, the evidence does not support a reasonable inference that Defendant Marquez's favorable view of Mr. Lawrence, or the reference he provided for Mr. Lawrence, lacked any rational basis such that it could be considered a violation of Plaintiff's constitutional right to equal protection. Additionally, there was no evidence linking Mr. Lawrence's prior employment relationship with Defendant Marquez to any retaliatory motive

-21-

Defendant Marquez might have harbored against Plaintiff or his uncle.  Thus, Defendant Marquez's relationship with Mr. Lawrence also provides no support for Plaintiff's First Amendment retaliation claim.

The constitutional deprivation alleged here is based on Plaintiff's family association with his uncle, Tony Trujillo, and a personal bias that Defendant Marquez allegedly harbored against Plaintiff as a result of this family association.  There is no allegation in the *Pretrial Order* that Plaintiff's constitutional rights were violated based on the theory that Defendant Marquez's favorable opinion of Mr. Lawrence was somehow irrational or retaliatory, or that Defendant Marquez's alleged bias against Plaintiff resulted from either individual's relationship with Mr. Lawrence.  For these reasons, the alleged municipal custom of allowing City employees on the screening committee to serve as references does not provide a basis for imposing municipal liability on Defendant Town of Silver City in this case.

I reach no opinion as to whether any of the municipal customs at issue here are in accordance with Defendant Town of Silver City's written hiring policies or any other aspect of state or local law.  It is unnecessary for the Court to decide this issue because the fact that a municipality's hiring process has not followed state or local law does not establish a legally sufficient basis for imposing municipal liability under 42 U.S.C. § 1983.  Alleged violations of state or local law, standing alone, cannot form the basis for municipal liability under this statute.  See Medina, 252 F.3d at 1133; Jones, 854 F.2d at 1209.  In order to establish such liability, Plaintiff must establish a "direct causal link" between the alleged municipal custom and the violation of his constitutional rights.  Hollingsworth, 110 F.3d at 744.  Plaintiff has

failed to do so in this case.  Accordingly, Defendants are entitled to judgment as a matter of law on this theory of municipal liability as well.

### 3.        The Theory of Inadequate Training or Supervision

In the *Pretrial Order*, Plaintiff also asserted a theory of municipal liability based on inadequate training or supervision.  To prevail on such a theory, a plaintiff must show that the failure to train or supervise amounts to "'deliberate indifference.'"  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting City of Canton, 489 U.S. at 385).  Such deliberate indifference may be shown "'when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'"  Id. (quoting Barney, 143 F.3d at 1307).  In other words, "a local government policymaker is deliberately indifferent when he 'deliberately' or 'consciously' fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff."  Hollingsworth, 110 F.3d at 745.

This theory of municipal liability is not established by evidence that a municipality is negligent or careless with respect to its hiring practices in a particular instance.  Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known consequence of his action.  See Bd. of County Comm'rs  of Bryan County v. Brown, 520 U.S. 397, 410 (1997).

In response to Defendant's oral motion at trial pursuant to Fed. R. Civ. P. 50(a), Plaintiff withdrew his theory that Defendant Town of Silver City should be held liable as a

municipality for failure to train or supervise its employees on proper hiring procedures in this case.  Based on Plaintiff's concession that this theory is no longer viable and the absence of legally sufficient evidence to support it, I conclude that Defendants are entitled to judgment as a matter of law on this theory of municipal liability as well.

### III.   CONCLUSION

For the foregoing reasons, I conclude that Defendants are entitled to judgment as a matter of law on Plaintiff's substantive due-process claim against Defendant Marquez, Plaintiff's supervisory liability claim against Defendant Brown, and Plaintiff's municipal liability claim against Defendant Town of Silver City.  Although I also conclude that Defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) must be denied as to Plaintiff's equal protection claim and First Amendment retaliation claim against Defendant Marquez, the jury found in favor of Defendant Marquez on these claims. Accordingly, judgment will be entered in favor of Defendant Marquez as to these claims based on the jury's verdict.

**IT IS, THEREFORE, ORDERED** that Defendant's oral motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) is **GRANTED IN PART** as to Plaintiff's substantive due-process claim against Defendant Mel Marquez, Plaintiff's supervisory liability claim against Defendant Alex Brown, and Plaintiff's municipal liability claim against Defendant Town of Silver City.

**IT IS FURTHER ORDERED** that Defendants' oral motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) is **DENIED IN PART** as to Plaintiff's equal protection claim against Defendant Mel Marquez and Plaintiff's First Amendment retaliation claim against Defendant Mel Marquez.  Judgment in favor of Defendant Mel Marquez on these claims will be entered pursuant to the jury's verdict.

**SO ORDERED**, this 29th day of July, 2005, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
*United States District Judge*