IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVE G. MONTES,

       Plaintiff,

vs.                                 CIV. NO.  03-1465 MCA/RHS

TOWN OF SILVER CITY,
ALEX BROWN, Town Manager,
and MEL MARQUEZ, all in their
individual and official capacities.

       Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's *Motion for New Trial* [Doc. No. 117] filed on August 5, 2005.  Having reviewed the parties' submissions, the relevant law, the evidence and jury instructions used at trial, and otherwise being fully advised in the premises, the Court denies Plaintiff's motion for the reasons set forth below.

I.      BACKGROUND

In the *Pretrial Order* [Doc. No. 71] and trial briefs [Doc. No. 79, 90], Plaintiff asserted three claims under 42 U.S.C. § 1983 against Defendant Mel Marquez.  First, Plaintiff claimed that by not recommending him for employment based on his relationship with his uncle, Tony Trujillo, Defendant Marquez "unduly burdened" Plaintiff's liberty interest in pursuing a family association in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment.  Second, Plaintiff asserted that Defendant

Marquez violated the Equal Protection Clause of the Fourteenth Amendment by intentionally treating Plaintiff differently than other applicants for personal reasons of "sheer vindictiveness" evincing an "illegitimate animus unrelated to any legitimate state objective." Third, Plaintiff claimed that by not recommending him for employment, Defendant Marquez was retaliating against him for exercising his constitutional right to freedom of association with his uncle, Tony Trujillo.  [Doc. No. 71, at 3-4.]  Plaintiff also asserted a supervisory liability claim under 42 U.S.C. § 1983 against Defendant Alex Brown, as well as a municipal liability claim under that statute against the Town of Silver City.  [Doc. No. 71, at 4-5.]

In the *Pretrial Order* [Doc. No. 71, at 5] and in its *Trial Brief* [Doc. No. 90] Defendants asserted that none of Plaintiff's theories state a claim under which relief may be granted.  Before and during the trial, defense counsel also made no secret of the fact that he intended to present evidence that Defendants would have made the same ultimate hiring decision regardless of Plaintiff's familial relationship with his uncle.  The main points of defense counsel's opening statement at trial were (1) that another applicant was far more qualified than Plaintiff, and (2) that other Town employees besides Defendant Mel Marquez independently reviewed the applications and made the ultimate decision about which applicant to hire without any knowledge that Tony Trujillo was Plaintiff's uncle.

In addition, defense counsel indicated in his opening statement that he was undertaking the burden of proving an affirmative defense by telling the jury:  "I will prove to you that David Lawrence was so far superior in qualifications that there won't be any doubt in your mind that the City hired the correct individual."  Defense counsel repeated the

-2-

phrase "I will prove to you" elsewhere in his opening statement when making the point that Defendants would have taken the same action regardless of Plaintiff's association with his uncle.  [Tr. 7-20-05.]  Plaintiff's counsel did not object to these remarks.

While some of the evidence on this point overlapped with Plaintiff's other claims, several of those other claims were dismissed before the case went to the jury because Defendants moved for judgment as a matter of law under Fed. R. Civ. P. 50 at the close of Plaintiff's case and again before the case was submitted to the jury.  In their motions, Defendants restated their contention that each of Plaintiff's theories failed to state a claim. Defendants also asserted that Plaintiffs failed to present sufficient evidence to support any of these theories at trial.

The Court granted Defendant's Rule 50 motion as to Plaintiff's substantive due process claim against Defendant Mel Marquez, Plaintiff's supervisory liability claim against Defendant Alex Brown, and Plaintiff's municipal liability claim against Defendant Town of Silver City.  As a result, the posture of the case changed significantly after the close of the evidence, and only Plaintiff's equal protection and retaliation claims against Defendant Mel Marquez went to the jury.

In crafting jury instructions for these remaining claims, the Court did not adopt either of the parties' requested instructions.  Instead, the Court presented the parties with a set of draft instructions that included the following language and citation to authority:

> Section 1983 of Title 42 of the United States Code provides that a person may sue for an award of money damages against anyone who, "under

color" of any State law or custom, intentionally violates his or her rights under the Constitution of the United States.

In this case, Plaintiff Steve Montes claims that Defendants Mel Marquez, while acting "under color" of state law or custom, retaliated against him for exercising his constitutional right to freedom of association under the First Amendment to the United States Constitution. Defendant Mel Marquez denies violating Plaintiff's First Amendment rights and asserts that he would have taken the same action regardless of Plaintiff's alleged exercise of his right to freedom of association.

In order to prevail on his First Amendment retaliation claim against Defendant Mel Marquez, Plaintiff must prove each of the following elements by a preponderance of the evidence:

First:  That Plaintiff Steve Montes engaged in an intimate association or family relationship with his uncle, Tony Trujillo;

Second:  That Plaintiff's intimate association or family relationship with his uncle, Tony Trujillo, was a substantial or motivating factor in Defendant Mel Marquez's decision not to recommend that the Town of Silver City hire Plaintiff as a mechanic;

Third:  That Defendant Mel Marquez's actions in this regard were "under color" of the authority of state law or custom; and

Fourth:  That Defendant Mel Marquez's actions in this regard were the proximate cause of damages sustained by Plaintiff.

I will explain each of these elements to you.

Regarding the first element of Plaintiff's First Amendment retaliation claim, I instruct you that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the Government because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives constitutional protection as a fundamental element of personal liberty.  A constitutionally protected intimate association or family relationship is distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.

-4-

Regarding the second element of Plaintiff's First Amendment retaliation claim, Plaintiff Steve Montes is not required to produce direct proof of Defendant Mel Marquez's alleged motive or intent to retaliate against him. A motive or intent to retaliate against a person for exercising their constitutional rights, if it exists, may be inferred from all the surrounding circumstances.

In order to prove that Plaintiff Steve Montes' exercise of his right to freedom of association was a "substantial or motivating" factor in Defendant Mel Marquez's decision, Plaintiff does not have to prove that the exercise of his right to freedom of association was the only reason that this Defendant acted against him. It is sufficient if Plaintiff proves that the exercise of his right to freedom of association was a determinative consideration that made a difference in Defendant Mel Marquez's adverse employment decision.

On the other hand, the law that applies to this claim requires only that a public employer refrain from taking action against an applicant for employment because of that person's exercise of protected First Amendment rights. So far as you are concerned with this claim, a public employer may choose which applicant to hire for any other reason, even if it is not the best possible choice, and you must not second guess that choice or permit any sympathy for a particular applicant to lead you to substitute your own judgment for that of the Defendant, even though you personally may not approve of the action taken and would have acted differently under the circumstances.

Regarding the third element of Plaintiff's First Amendment retaliation claim, the parties have agreed that Defendant Mel Marquez acted "under color" of the authority of the State of New Mexico, and you must accept this fact as proven.

Regarding the fourth element of Plaintiff's First Amendment retaliation claim, Plaintiff must prove by a preponderance of the evidence that Defendant Mel Marquez's alleged action in retaliating against him was the proximate cause of his damages.

A proximate cause of damages is that which in a natural and continuous sequence produces the damages, and without which the damages would not have occurred. It need not be the only cause, nor the last nor the nearest cause. It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the damages.

If you find that Plaintiff Steve Montes has proven by a preponderance of the evidence that Defendant Mel Marquez's conduct was a substantial factor or a motivating factor in Defendant Mel Marquez's employment decision, you must then determine whether Defendant Mel Marquez has established by a preponderance of the evidence that he would have reached the same decision even in the absence of Plaintiff's protected conduct.

If you find that Plaintiff has proven each of the elements of the First Amendment retaliation claim described above by a preponderance of the evidence, and that Defendant Mel Marquez has failed to prove by a preponderance of the evidence that he would have reached the same decision even in the absence of Plaintiff's protected conduct, then you must find for the Plaintiff and against Defendant Mel Marquez on this claim. If you find that Plaintiff did not prove each of the elements of his First Amendment retaliation claim by a preponderance of the evidence, or if you find that Defendant Mel Marquez has proven by a preponderance of the evidence that he would have reached the same decision even in the absence of Plaintiff's protected conduct, then you must find against Plaintiff and for Defendant Marquez on this claim.

[Plaintiff's Proposed Instruction No. 7, 7C, as modified; Defendant's Proposed Instruction No. 7C, as modified; 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions, Civil § 168.20, at 787-88 (5th ed. 2001) (incorporating elements from Fifth Circuit Civil Pattern Jury Instruction 10.4 (2005), and Eleventh Circuit Civil Pattern Jury Instruction 1.1.1 (2000)), as modified; Worrell v. Henry, 219 F.3d 1197, 1205-06 (10th Cir. 2000) (applying Pickering balancing test to a failure-to-hire claim against a public employer); Akers v. McGinnis, 352 F.3d 1030, 1036 (6th Cir. 2003) (analyzing freedom of association claim under Pickering framework); Thaddeus-X v. Blatter, 175 F.3d 378, 390 (6th Cir.1999) (en banc) (same); Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984) (defining parameters of constitutional right to "intimate association"); cf. Lunow v. City of Okla. City, 61 Fed. Appx. 598, 2003 WL 1605863, at *5 (10th Cir. Mar. 28, 2003) (unpublished disposition recognizing a split among circuits as to whether freedom of association claim must touch on a "matter of public concern"); Shahar v. Bowers, 114 F.3d 1097, 1102-03 (11th Cir. 1997) (en banc) (concluding that governmental restrictions on the right of intimate association do not require strict scrutiny in the public employment context).]

[Doc. No. 111, at Instruction No. 6.]  After they were each afforded the opportunity to review all of the Court's draft instructions pursuant to Fed. R. Civ. P. 51(b), both parties objected to the draft instruction quoted above pursuant to Fed. R. Civ. P. 51(c).

In conjunction with their motion for judgment as a matter of law under Fed. R. Civ. P. 50, Defendants objected on the grounds that Plaintiff failed to state a viable retaliation claim and that there was insufficient evidence to submit his retaliation claim to the jury.  In the alternative, Defendants requested that an instruction on this claim should include, as an additional element, the requirement that Plaintiff prove the Defendant's actions had a chilling effect on his exercise of First Amendment rights as articulated in Mimics v. Village of Angel Fire, 394 F.3d 836, 847 (10th Cir. 2005).

Plaintiff agreed that the Court's draft instruction was a correct statement of the law but objected to the paragraph stating that:  "If you find that Plaintiff Steve Montes has proven by a preponderance of the evidence that Defendant Mel Marquez's conduct was a substantial factor or a motivating factor in Defendant Mel Marquez's employment decision, you must then determine whether Defendant Mel Marquez has established by a preponderance of the evidence that he would have reached the same decision even in the absence of Plaintiff's protected conduct."  Plaintiff characterized this paragraph as an affirmative defense and asserted that Defendants had waived this defense by failing to include it in their *Answer* or in the *Pretrial Order*.

The Court overruled the parties' objections as to the draft instruction on Plaintiff's retaliation claim for reasons that are explained in more detail in the analysis below.  Thus,

the final instructions to the jury on this claim were substantially the same as those proposed in the draft instruction quoted above (without the citation to authority).  [Doc. No. 112, at Instruction No. 6.]

After receiving the Court's instructions and retiring to deliberate, the jury returned verdicts in favor of Defendants on all of Plaintiff's remaining claims on July 21, 2005.  [Doc. No. 113.]  The Court entered judgment in Defendants' favor on July 29, 2005.  [Doc. No. 114, 115.]  On August 5, 2005, Plaintiff filed a motion for a new trial pursuant to Fed. R. Civ. P. 59(a), in which they renewed their objection to the inclusion of the affirmative defense in the jury instruction regarding Plaintiff's retaliation claim.  [Doc. No. 117, 118.]

Defendants oppose Plaintiff's motion.  They argue that the affirmative defense to which Plaintiff objects was tried with the parties' implied consent and that Plaintiffs were not substantially prejudiced by the inclusion of the language in the jury instruction referring to this defense.

## II.   __ANALYSIS__

Fed. R. Civ. P. 59(a) provides, in relevant part, that:  "A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ."  An error of law in the jury instructions may provide grounds for a new trial under this rule when it adversely affects the substantial rights of the parties, as when a court instructs a jury on an affirmative defense that is not supported by the evidence.  See, e.g., __Farrell v. Klein Tools, Inc.__, 866 F.2d 1294, 1295

(10th Cir. 1989).  But in determining whether the parties substantial rights are affected, the harmless-error rule applies where "the court allegedly erred not by instructing on an unwarranted theory, but by misstating the law on a viable theory." Morrison Knudsen Corp. v. Fireman's Fund Ins. Co., 175 F.3d 1221, 1236 (10th Cir. 1999).  Further, in reviewing a motion for a new trial under Rule 59(a), the Court considers the evidence in the light most favorable to the prevailing party, see Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999), and in accordance with the principle that "appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact," are the exclusive functions of the jury.  Kitchens v. Bryan County Nat'l Bank, 825 F.2d 248, 251 (10th Cir.1987); accord Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co., 104 F.3d 1205, 1212 (10th Cir.1997).

In this case, Plaintiff does not assert that the Court erred by submitting a jury instruction that is unsupported by the evidence, nor does he assert that the Court's jury instructions misstated the law with respect to a viable theory.  Rather, Plaintiff asserts that the Court erred by instructing the jury on an affirmative defense that Defendants had waived by not expressly raising it in their *Answer*, in the *Pretrial Order*, or in their *Trial Brief*.

To support this assertion, Plaintiff relies on the premise that his retaliation claim in this case falls under the category of First Amendment free-speech claims recognized by the United States Supreme Court in Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977). Mt. Healthy involved a teacher who made a telephone call to a local radio station to

complain about a proposed dress code that a school principal intended to impose at the school where the teacher worked.  See id. at 282.  The telephone call was brought to the attention of the school principal, and the teacher subsequently lost his employment for the following school year based partly on his telephone call to the radio station and partly on other reasons.  See id. at 282-83.  The teacher then filed suit alleging that the school district's decision not to rehire him was substantially motivated by his exercise of his First Amendment right to freedom of speech.

The Supreme Court evaluated the teacher's First Amendment retaliation claim under the familiar framework set forth in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), noting that the "'question of whether speech of a government employee is constitutionally protected expression necessarily entails striking 'a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  Mt. Healthy, 429 U.S. at 284 (quoting Pickering, 391 U.S. at 568).  Applying the Pickering test, the Supreme Court accepted the trial court's findings that the teacher's call to the radio station was protected speech that touched on a matter of public concern.  See Mt. Healthy, 429 U.S. at 284.  In addition, there was direct evidence of a causal relationship between this protected speech and the decision not to rehire the teacher because the employer's statement of reasons for this decision expressly referred to the teacher's telephone call.  See id. at 283 n.1.

Nevertheless, the Supreme Court held that the district court "should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct." Id. at 287.  As the burden of making this showing fell on the employer, it came to be recognized as an affirmative defense that could be appended to the Pickering test when "the plaintiff says that the adverse decision was based on speech, and the defendant says that the decision was based on something else." Gooden v. Neal, 17 F.3d 925, 929 (7th Cir. 1994).  In such instances, "the jury should be told what to do if it concludes that the employer had both motives," and the affirmative defense recognized in "Mt. Healthy gives the jury that essential information." Gooden, 17 F.3d at 929.

Plaintiff's retaliation claim in the present case is similar to Pickering and Mt. Healthy in some respects and dissimilar in other respects.  Like Pickering and Mt. Healthy, Plaintiff's retaliation claim arises in the context of public employment, and in this context I agree with Plaintiff that the Pickering test provides a more appropriate framework for instructing the jury than the more generalized test articulated in Mimics, 394 F.3d at 847.

On the other hand, the pleading of Plaintiff's retaliation claim was not so obviously analogous to Pickering and Mt. Healthy that Defendants can be faulted for failing to expressly raise a Mt. Healthy defense in their pretrial filings.  Unlike the facts of Pickering or Mt. Healthy, Plaintiff presented no evidence that he engaged in constitutionally protected speech on a matter of public concern.  Rather, Plaintiff's retaliation claim rests on the premise that he engaged in some sort of constitutionally protected activity by virtue of the

fact that he has an uncle who is a prominent businessman and representative of the Phelps-Dodge Mining Company.  Plaintiff did not allege, much less prove, that he engaged in any political, business, or labor-union activity with his uncle.  He also did not present evidence to show that the activities he pursued with his uncle went beyond a normal family relationship and touched on a matter of public concern.  While Plaintiff's *Complaint* initially alleged that he listed his uncle's name as a reference on his employment application, there was no evidence to support this allegation at trial, nor was there evidence that Plaintiff engaged in any affirmative conduct or expressive activity directed at bringing his relationship with his uncle to the attention of Defendant Mel Marquez or other Town officials.

As a result, Plaintiff's retaliation claim involved, at best, an intimate association or family relationship with his uncle, rather than any speech or expressive association on a matter of public concern.  A retaliation claim based solely on the right of intimate association with an extended family member such as an uncle is quite novel in the context of public-employment cases, and Plaintiff cited no precedent in his pleadings, trial brief, requested jury instructions, or in the *Pretrial Order* which expressly recognized this novel type of retaliation claim in the public-employment context or set forth the appropriate jury instruction to be used for such a claim in this context.

Such a claim does not fall squarely under the Pickering/Mt. Healthy framework because, among other things, it is an open question whether our Circuit would even recognize a retaliation claim in the public-employment context when it is based on an association that does not touch on a matter of public concern and that contains no expressive

or political component.  See Lunow v. City of Okla. City, 61 Fed. Appx. 598, 2003 WL 1605863, at *5 (10th Cir. Mar. 28, 2003) (unpublished disposition recognizing a split among other circuits as to whether the first element of the Pickering test applies in freedom of association cases).  In the Seventh Circuit, for example, "a public employee is protected from adverse employment consequences based on the exercise of the right to freedom of association only when the associational conduct relates to a matter of public concern."  Klug v. Chicago Sch. Reform Bd. of Tr's, 197 F.3d 853, 857 (7th Cir. 1999).  The Eleventh Circuit, on the other hand, has concluded that "application of a requirement that associational activity relate to a matter of public concern in order to be constitutionally protected would overturn Supreme Court and Eleventh Circuit jurisprudence and exact a substantial toll upon first amendment liberties."  Hatcher v. Bd. of Pub. Educ. and Orphanage for Bibb County, 809 F.2d 1546, 1558 (11th Cir. 1987).  Accordingly, in the Eleventh Circuit "no such requirement applies in this context," and the employee need only "demonstrate that she engaged in protected activity" in order to satisfy the first element of the Pickering test.  Id. But cf. Shahar v. Bowers, 114 F.3d 1097, 1102-03 (11th Cir. 1997) (en banc) (concluding that governmental restrictions on the right of association do not require strict scrutiny in the public employment context).

As previously noted in the Court's *Memorandum Opinion and Order* [Doc. No. 114] granting judgment as a matter of law on Plaintiff's substantive due-process claim, it is also questionable whether a typical family relationship between an uncle and a nephew falls under the type of "intimate association" that would be recognized as a constitutionally

protected liberty interest in the public employment context.  The Constitution does not

protect every individual's right to associate with every other individual in the universe.

Rather, the Constitution only protects a limited category of associations that play a key role

"in safeguarding the individual freedom that is central to our constitutional scheme" or that

serve "as an indispensable means of preserving other individual liberties."  <u>Roberts v.

Jaycees</u>, 468 U.S. 609, 617-18 (1984).

　　　For purposes of deciding Plaintiff's motion for a new trial, it is unnecessary to resolve

these substantive questions about whether Plaintiff's family relationship with his uncle is

constitutionally protected or whether the <u>Pickering</u> test applies to a retaliation claim premised

on this kind of relationship.  It suffices to say that Plaintiff's retaliation claim is so novel and

was referenced in such an imprecise manner in his pretrial filings that it would be unfair to

preclude a Defendant from waiting until trial to raise an affirmative defense analogous to the

one recognized in <u>Mt. Healthy</u> based solely on the fact that the Defendant did not anticipate

the need for such a defense earlier and expressly set it forth in the pretrial filings.

　　　Fed. R. Civ. P. 15(b) provides that "[w]hen issues not raised by the pleadings are tried

by express or implied consent of the parties, they shall be treated in all respects as if they had

been raised in the pleadings."  In reviewing a district court's application of this rule, our

Circuit has emphasized that "the purpose of the federal rules is to provide the maximum

opportunity for each  claim to be decided on the merits rather than on the basis of procedural

factors."  <u>State Distributors, Inc. v. Glenmore Distilleries Co.</u>, 738 F.2d 405, 410 (10th Cir.

1984).  In particular, "Rule 15(b) is 'intended to promote the objective of deciding cases on

their merits rather than in terms of the relative pleading skills of counsel[.]'" <u>Green Country Food Mkt., Inc. v. Bottling Group, Inc.</u>, 371 F.3d 1275, 1280 (10th Cir.2004) (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure,  1491, at § 5 (2d ed.1990)).  To the extent that the Court's assessment of the relative pretrial pleading skills of counsel has any bearing on which claims and defenses deserved to be included in the jury instructions in this case, then I find that counsel for both parties share responsibility for not pleading their respective claims and defenses more precisely with citations to relevant authorities, and neither party deserves to benefit from the other party's lack of foresight in this regard.

Several other factors also informed my decision to overrule the parties' objections to the Court's draft instruction on Plaintiff's retaliation claim.  In addition to the sheer novelty and lack of precedent for the type of retaliation claim that unfolded during the trial of this case, I must also take into account the fact that the posture of the case changed significantly after I granted Defendant's motion for judgment as a matter of law under Fed. R. Civ. P. 50 as to Plaintiff's substantive due-process, supervisory liability, and municipal liability claims. As a result of this ruling, the evidence previously introduced to prove or disprove these claims was no longer relevant for these purposes, and it was possible that the only remaining relevance of some of this evidence was to prove or disprove the elements of Plaintiff's retaliation claim.

Our Circuit has recognized that:  "Implied consent cannot be based upon the introduction of evidence that is relevant to an issue already in the case when there is no indication that the party presenting the evidence intended to raise a new issue." <u>Moncrief</u>

v. Williston Basin Interstate Pipeline Co., 174 F.3d 1150, 1162 (10th Cir. 1999).  But here

defense counsel already indicated in his opening statement that he would be undertaking the

burden of proving an affirmative defense, and the relevance of some of the evidence

introduced at trial changed as a result of the Court's ruling on Defendants' Rule 50 motion,

which eliminated a number of the issues that had been in the case up to that point.  This

combination of circumstances weighed in favor of giving both parties the opportunity to seek

amendment or clarification of the jury instructions as to which party would bear the burden

of proving or disproving each aspect of the remaining claims, rather than relying on a strict

reading of the claims and defenses set forth in the pretrial filings.  As required under Fed.

R. Civ. P. 51(b), the Court's draft instructions provided the parties with that opportunity.

Finally, regardless of what jury instructions the parties' requested or objected to, it

is the Court's responsibility to craft instructions that give the jury a sufficient understanding

of the issues and its duty to determine those issues.  See generally Wheeler v. John Deere

Co., 935 F.2d 1090, 1102 (10th Cir. 1990).  After the evidence unfolded at trial and the

Court issued its ruling on Defendants' Rule 50 motion, the case boiled down to a situation

where the Plaintiff said the employment decision was based on his association with his uncle,

and the Defendant undertook the burden of proving the decision was based on other,

permissible factors (such as the presence of another applicant who was more qualified or the

independent review by other Town employees involved in the hiring process).  In this

situation, the jury needed to be told "what to do if it concludes that the employer had both

motives," and the affirmative defense recognized in <u>Mt. Healthy</u> gave the jury that "essential information."  <u>Gooden</u>, 17 F.3d at 929.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court's jury instruction on Plaintiff's retaliation claim does not provide grounds for granting a new trial in this case.

**IT IS, THEREFORE, ORDERED** that Plaintiff's *Motion for New Trial* [Doc. No. 117] is **DENIED**.

**SO ORDERED**, this 4th day of November, 2005, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*